UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                     Case No. 12-60750

FRANCES WILLIAM DIXON,                                     Chapter 7

                Debtor.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING (1) "MOTION TO SET ASIDE ORDER DATED 10/31/2012;"
AND (2) "DEBTOR'S MOTION FOR SANCTIONS AND TO ENFORCE OCTOBER 31,
2012 [ORDER] TO RETURN 2002 SUZUKI MOTORCYCLE TO DEBTOR"**

      This Chapter 7 case requires to Court to decide the following question of Michigan law: when a judgment creditor causes a motorcycle to be sold at an execution sale, what events must occur before ownership of the motorcycle changes from the judgment debtor to the purchaser?

**I. Background and facts**

      The question just noted is important in this case because the Debtor's motorcycle was sold at an execution sale, by auction, on the day the Debtor filed this bankruptcy case. The Debtor contends that the sale was a violation of the automatic stay under 11 U.S.C. § 362(a), and therefore is voidable, because the sale occurred after the bankruptcy petition was filed.[1] The Court Officer involved in the sale, Michael Jones, disagrees, and contends that the sale was completed before the bankruptcy case was filed.

      The Debtor in this case filed his voluntary Chapter 7 bankruptcy petition on September

---

[1] *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993):

> In summary, we hold that actions taken in violation of the automatic stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

12, 2012 at 4:44 p.m.  Before he did so, a judgment creditor caused an execution seizure of the Debtor's 2002 Suzuki motorcycle.  An execution sale was noticed for September 12, 2012 at 4:00 p.m.  Court Officer Victor Lotyz conducted the sale, assisted by Court Officer Michael Jones.  It is undisputed that the Court Officer began and ended the public auction of the motorcycle minutes *before* Debtor filed his bankruptcy petition, and, therefore, before the automatic stay arose under 11 U.S.C. § 362(a).  It is also undisputed that the successful (and only) bidder at the sale was R.J. Luczak Enterprises, whose President is Rick Luczak.

On October 10, 2012, Debtor filed a motion to void the sale and to compel the return of the motorcycle to him.[2]  His motion named as respondents the Court Officer Michael Jones and the purchaser.  After no timely response was filed to the motion, Debtor filed a certificate of no response and the Court entered an order granting the motion.  The order, signed on October 31, 2012 and entered on November 1, 2012, stated, in pertinent part:

> IT IS FURTHER ORDERED that the sale of Debtor's 2002 Suzuki
> Motorcycle, as described in the Motion, is declared to be void
> because the sale was done in violation of the automatic stay, and
> the motorcycle must be returned to the Debtor immediately.[3]

On November 5, 2012, Court Officer Michael Jones filed a motion to vacate the November 1 Order.  Debtor then filed, on November 9, 2012, a motion to enforce the November 1 Order and for sanctions.[4]

---

[2] Docket # 16.

[3] Docket # 21.

[4] "Motion to Set Aside Order Dated 10/31/2012 (Docket # 21)" (Docket # 22); "Debtor's Motion for Sanctions and to Enforce October 31, 2012 [Order] to Return 2002 Suzuki Motorcycle to Debtor" (Docket # 23).

2

The Court held a hearing on these motions on December 5, 2012. The Court ordered the Debtor and the Court Officer to file post-hearing briefs on the issue of "when the execution sale by auction of Debtor's 2002 Suzuki motorcycle was complete and final." The parties timely filed their briefs.

This opinion addresses the issue briefed, in part, by answering the legal question posed at the beginning of this opinion. And given the Court's answer to that legal question, the Court concludes that an evidentiary hearing is required in order to fully resolve the motions.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, namely Bankruptcy Code § 362(a). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

## III. Discussion

### A. Article 2 of the Michigan UCC and the Court Officer's argument

The Court Officer relies on Mich. Comp. Laws Ann. § 440.2328(2), which is part of

3

Article 2 of the Uniform Commercial Code ("UCC"), as adopted in Michigan. UCC Article 2 applies generally to "transactions in goods," unless "the context otherwise requires," *see* Mich. Comp. Laws Ann. § 440.2102. And the word "goods" is defined broadly enough to include a motorcycle. *See* Mich. Comp. Laws Ann. § 440.2105(1)(with exceptions not applicable here, "goods" means "all things . . . which are movable at the time of identification to the contract for sale.")

Section 440.2328(2) says that "[a] sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner." The parties agree that this event — in effect, the "fall of the hammer" — occurred *before* the Debtor's bankruptcy petition was filed (*i.e.*, before 4:44 p.m. on September 12, 2012). But Debtor argues that, notwithstanding this statute, the sale of his motorcycle was not yet completed when the auctioneer announced that the auction was complete "by the fall of the hammer or in other customary manner." Debtor argues that § 440.2328(2) does not establish the point at which the execution sale of Debtor's motorcycle was complete. The parties have cited no cases applying or construing § 440.2328(2).

From the undisputed facts, it is clear that a contract arose between the Court Officer (in his capacity as such) and the purchaser at the moment the hammer fell at the auction sale. *See J & L Inv. Co., LLC v. Dep't of Natural Res.*, 593 N.W.2d 196, 199, 200 (Mich. Ct. App. 1999)(a contract is formed at an auction when "the auctioneer signifies acceptance of the highest bid, *i.e.*, at the 'fall of the hammer'"). The time when such contract for sale of the motorcycle arose is potentially important, in turn, because of a provision in UCC Article 2 stating that under certain circumstances, title to goods passes "at the time and place of contracting" for their sale. Mich.

4

Comp. Laws Ann. § 440.2401 states, in pertinent part:

> (1) . . . Subject to these provisions and to the provisions of the article on secured transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
> . . .
>
> (3) **Unless otherwise explicitly agreed where delivery is to be made without moving the goods,**
> . . .
>
> (b) **if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.**[5]

(emphasis added).

Viewing only these provisions in Michigan's UCC, then, one might think that title to the Debtor's motorcycle passed to the execution sale purchaser at the moment the "hammer fell" concluding the auction. But the Court concludes otherwise, based on provisions in the Michigan Vehicle Code discussed below. Those provisions, rather than the Michigan UCC, govern the issue of when title to the Debtor's motorcycle passed.

### B. The Michigan Vehicle Code, relied on by Debtor

The Debtor argues that this dispute is controlled by provisions in the Michigan Vehicle Code ("MVC"), rather than the UCC. The MVC governs registration, titling, sale, transfer, ownership and regulation of motor vehicles. Mich. Comp. Laws Ann. §§ 257.1 to 257.923. Motorcycles are considered motor vehicles under the MVC. *See* Mich. Comp. Laws Ann. §§ 257.33; 257.31; *People v. Smith*, 120 N.W. 581, 582 (Mich. 1909)(holding that motorcycles

---

[5] Michigan's UCC Article 2 defines "sale" by saying that a "'sale' consists in the passing of title from the seller to the buyer for a price (section 2401)." *See* Mich. Comp. Laws Ann. § 440.2106(1). The reference to "section 2401" in § 440.2106(1) is to § 440.2401, quoted above.

5

12-60750-tjt    Doc 35    Filed 04/05/13    Entered 04/05/13 16:58:51    Page 5 of 10

are motor vehicles).

Under Mich. Comp. Laws Ann. § 257.216, with exceptions not applicable here, every motor vehicle "is subject to the registration and certificate of title provisions" of the MVC. An owner of a vehicle must "apply to the secretary of state, upon an appropriate form furnished by the secretary of state, for the registration of the vehicle and issuance of a certificate of title for the vehicle." Mich. Comp. Laws Ann. § 257.217(1). Once a certificate of title is issued, it is "valid until canceled by the secretary of state for cause or upon a transfer of an interest shown on the certificate of title." Mich. Comp. Laws Ann. § 257.226(7).

If ownership of a vehicle passes by operation of law, "upon furnishing satisfactory proof of that ownership to the secretary of state, the person acquiring the vehicle may procure a title to the vehicle regardless of whether a certificate of title has ever been issued." Mich. Comp. Laws Ann. § 257.236(1). The MVC further provides:

> [u]pon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, **the effective date of the transfer of title or interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee.**

Mich. Comp. Laws Ann. § 257.233(9)(emphasis added).

The Michigan Supreme Court has consistently held that compliance with the requirements of the MVC is required in order to transfer the title of a motor vehicle. *See Goins v. Greenfield Jeep Eagle*, *Inc.*, 534 N.W.2d 467, 472 (Mich. 1995)(collecting cases and explaining the importance of compliance with the Michigan Vehicle Code's transfer of title requirements to the transfer of ownership of a motor vehicle); *Cain v. Kroblen GMC Truck Sales*,

6

*Inc.*, 103 N.W.2d 353, 355 (Mich. 1960)(recognizing repeated holdings that "transfer of title of an automobile cannot be effected without compliance with" requirements of the motor vehicle code). Failure to comply with the statutory requirements makes the transfer of title void. *Bayer v. Jackson City Bank & Trust Co.*, 55 N.W.2d 746, 749-51 (Mich. 1952)(failure to comply with delivery of certificate of title requirements of motor vehicle code voids automobile sale transaction); *Michigan Mut. Auto Ins. Co. v. Reddig*, 341 N.W.2d 847, 849 (Mich. Ct. App. 1983)(holding that sale of motor vehicle that did not include transfer of the certificate of title as required by statute was void).

Under the provisions of the MVC quoted above, particularly Mich. Comp. Laws Ann. § 257.233(9), each of the following events had to occur before title to the Debtor's motorcycle passed to the execution sale purchaser: (1) "delivery" of the motorcycle to the purchaser; (2) "the transfer, sale, or assignment of the title or interest in" the motorcycle; and (3) "signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee."

**C. On the issue in this case, the MVC trumps the UCC**.

As the foregoing discussion suggests, on the issue of when ownership of Debtor's motorcycle changed from the Debtor to the execution sale purchaser, an apparent conflict exists between the provisions of the UCC and those of the MVC. The former apply to the sale of "goods" generally, while the latter apply to the sale of a motor vehicle (including a motorcycle) specifically. Michigan law is clear, however, that the more specific provisions of the MVC govern. *See William G. Wilcox, D.O., P.C. Emp. Defined Benefit Pension Trust v. U.S.*, 888 F.2d 1111, 1116 (6th Cir. 1989)(noting that under Michigan law, where the goods are motor vehicles,

7

the MVC rather than the UCC controls the transfer of ownership)(citing *Whitcraft v. Wolfe*, 348 N.W.2d 400 (Mich.Ct.App. 1985)). As quoted by the Sixth Circuit in *Wilcox*, the Michigan Court of Appeals in *Whitcraft* held:

> "While the Uniform Commercial Code (UCC) governs the sale of goods, where specific goods involved are automobiles, the UCC's provisions must be reconciled with those of the Michigan Vehicle Code (MVC). The UCC does not govern the means by which automobile ownership is transferred except perhaps where the MVC contains no applicable law. . . . The MVC preempts the UCC in regard to transfers of ownership."

*Wilcox,* 888 F.2d at 1116 (quoting *Whitcraft v. Wolfe*, 348 N.W.2d at 404)(internal citations omitted); *see also Colonial Dodge, Inc. v. Miller*, 328 N.W.2d 678, 681 (Mich. Ct. App. 1982) ("The Michigan Vehicle Code governs transfer of ownership of vehicles and thus preempts the Uniform Commercial Code."); *Messer v. Averill*, 183 N.E.2d 802, 804-05 (Mich. Ct. App. 1970) (rejecting argument that transfer of automobile ownership is governed by Mich. Comp. Laws Ann. § 440.2401(2), and holding that Michigan Vehicle Code's transfer of title requirements control transfer of ownership of automobile); *see generally Heims v. Sch. Dist. No. 6 of Davison Twp.*, 234 N.W. 486, 487 (Mich. 1931).[6]

Thus, the MVC's title transfer provisions govern, and the UCC provision relied on by the

---

[6] In *Heims*, the Michigan Supreme Court reasoned:

> It is a rule of statutory construction "that where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are co[n]temporaneous, as the Legislature are not to be presumed to have intended a conflict."

*Id.* (citations omitted).

8

Court Officer do not.

### D. An evidentiary hearing is required.

Applying the MVC provisions discussed above, the Court concludes that an evidentiary hearing is necessary to determine whether title to the motorcycle passed to the execution sale purchaser before the Debtor filed his bankruptcy petition. If it did, then the sale of Debtor's motorcycle was not a violation of the automatic stay. If it did not, then the motorcycle sale occurred post-petition, and the sale violated the automatic stay.

It is clear from the undisputed facts in this case that neither of the following two events necessary to change ownership of the motorcycle — "delivery" of the motorcycle to the execution sale purchaser; and execution of an "application for title or assignment of the certificate of title by the purchaser, transferee, or assignee" within the meaning of Mich. Comp. Laws Ann. § 257.233(9) — had yet occurred at the moment the "hammer fell" concluding the auction of the Debtor's motorcycle. And there is a factual dispute about when these events did occur, and whether they occurred before or after Debtor's bankruptcy petition was filed.

The affidavits and documents filed to date by the parties indicate, among other things, that (1) the Court Officer signed and gave to the execution sale purchaser a bill of sale for the motorcycle, dated "9-12-2012;" (2) the purchaser signed a form entitled "Statement of Vehicle Sale" that is dated "9 12 2012" and filed that document with the Michigan Secretary of State's office; and (3) the Michigan Secretary of State characterized this "Statement of Vehicle Sale" document as an application for title, and issued a certificate of title to the purchaser based on this form.[7] The purchaser's signature on the "Statement of Vehicle Sale" therefore may constitute the

---

[7] *See* Docket # 31, documents at Ex. C.

"signature on . . . the application for title . . . by the purchaser, transferee, or assignee," within the meaning of Mich. Comp. Laws Ann. § 257.233(9). But the evidence currently in the record is either inconclusive or in conflict on the questions of exactly when the bill of sale was given to the purchaser by the Court Officer; when the purchaser signed the "Statement of Vehicle Sale" form; and when the Court Officer "delivered" the motorcycle to the purchaser, within the meaning of § 257.233(9). The Court cannot determine, without holding an evidentiary hearing, which of these events, if any, occurred before the moment the Debtor filed his bankruptcy petition on September 12, 2012, rather than after that moment.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order scheduling an evidentiary hearing on the pending motions.

**Signed on April 5, 2013**                                  **/s/ Thomas J. Tucker**
                                                             **Thomas J. Tucker**
                                                             **United States Bankruptcy Judge**